UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division


JOHN S. MOREHOUSE,

    Plaintiff,

v.                         Civil Action No. 2:14cv392

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION


Plaintiff JOHN S. MOREHOUSE ("Morehouse" or "Claimant") seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act. Specifically, Morehouse claims the ALJ improperly analyzed the medical evidence from treating physicians and non-examining agency doctors; improperly assessed his credibility; and erred in evaluating the testimony of a Vocational Expert ("VE"). This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, this report recommends that the

1

final decision of the Commissioner be affirmed.

## I.   PROCEDURAL BACKGROUND

Morehouse filed an application for DIB, alleging disability beginning December 19, 2008, as a result of "lumbar and cervical spine impairments," and vision impairments including a "blind right eye." (R. 183-86, 206). The Commissioner denied his application initially, (R. 72-79), and upon reconsideration, (R. 82-89). Morehouse requested an administrative hearing, which was conducted on July 18, 2013. (R. 45-71).

An Administrative Law Judge ("ALJ") concluded that Morehouse was not disabled within the meaning of the Social Security Act, and denied his claim for benefits. (R. 28-37). The Appeals Council denied review of the ALJ's decision, (R. 1-2), thereby making the ALJ's decision the final decision of the Commissioner. Morehouse then filed this action seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g). This case is now before the Court to resolve the parties' cross-motions for summary judgment.

## II.   FACTUAL BACKGROUND

Morehouse was born in 1948 and was 60 years old on the date of alleged onset. (R. 183). He holds two masters degrees and received additional post-graduate training. (R. 51). He was previously employed as a financial project controller with a contractor, Radiant Systems, and with Johnson Controls. (R. 51,

54).   He  stopped  working  on  December  19,  2008  because  his
contract  had  expired.   (R.  206).   Thereafter,  he  sought  and
received  unemployment  benefits  because  he  was  unsuccessful  in
obtaining  a  new  job.   (R.  51).

Although  his  medical  records  address  a  variety  of
conditions  for  which  he  sought  treatment,  his  primary  complaint
is  low  back  pain,  which  he  attributes  to  a  variety  of  medical
problems  associated  with  his  spine,  and  beginning  with  a  motor
vehicle  accident  30  years  ago.   (R.  56-57).   He  primarily
treated  his  low  back  pain  with  his  primary  care  physician,  Dr.
Alan  Weiss  and  a  Rheumatologist,  Dr.  Gordon  Hutchinson.  (R.
324).

On  April  15,  2008,  Morehouse  consulted  with  Dr.  Weiss  for  a
variety  of  complaints  including  "periodic  bilateral  back  pain."
On  examination  he  back  was  non-tender  with  nearly  a  full  range
of  motion  and  no  pain.   (R.  494).   Dr.  Weiss  diagnosed  back
pain,  "probably  mechanical"  and  referred  him  for  an  x-ray  of  his
lumbar  spine  noting  that  "if  negative  or  shows  degenerative  will
monitor."   (R.  494).   The  x-ray  ordered  by  Dr.  Weiss  did  show
severe  degenerative  changes,  which  "appeared  to  have  increased
in  prominence  involving  the  lower  thoracic  segments."   The  x-ray
interpreted  by  radiologist  Bernard  Jay,  M.D.,  also  noted
moderately  severe  degenerative  changes  at  L4-5  and  L5-S1,  but  no
compression  deformities  or  boney  lesions.   It  was  compared  with

a lumbar spine series taken 10 years earlier.  (R. 363).

Although Dr. Weiss's records are difficult to decipher, it appears that Morehouse did not undergo any specific treatment for his back pain until 2010.  On October 19, 2010, Morehouse consulted with Dr. Weiss again complaining of long-standing intermittent low back pain and noting that it had been more persistent in the last month.  Dr. Weiss observed that Morehouse had no neurological symptoms, numbness or paresthesias.  He referred Morehouse for physical therapy two times a week for four to six weeks, therapeutic exercises, and explained appropriate back care.  His notes of that date state that Morehouse "declined medicine."  (R. 476).

The medical records before the Commissioner apparently only include an intake note from the physical therapist dated October 29, 2010.  The note observes that Morehouse's lower back pain "started about a month ago when he increased the frequency of exercising."  The therapist also observed the 2008 x-rays indicated degenerative disc disease.  She described Morehouse's complaints as 8 of 10 pain two to three times a day and reduced hip and lumbar motion, which was preventing him from exercising. Despite the absence of records, Morehouse apparently attended physical therapy, and on November 29, 2010, he reported to Dr. Weiss that his back had improved after his six to eight visits and the completion of exercises. With regard to his back pain on

4

that date, Dr. Weiss's notes reflect that Morehouse "found that a certain chair in his home office was cause [sic] and avoiding that chair was helpful." (R. 333).

In May, 2011, Morehouse consulted with rheumatologist Dr. Gordon J. Hutchinson at the request of Dr. Weiss. In that visit, he described to Dr. Hutchinson "the rather acute onset of low back pain when he was working out doing leg lifts with 50 lbs. weight." He stated that physical therapy was only moderately helpful and that his pain was brought about by prolonged sitting or standing. On examination, Dr. Hutchinson noted that his weight was 288 lbs., and he had decreased rotational motion of the thoracic spine and cervical spine, and a marked restriction of lumbar spinal kinetics, but no tenderness at the SI joints, normal tendon reflexes, and the ability to stand on his heels and toes. Dr. Hutchinson stated that "Mr. Morehouse has a classical story for mechanical low back pain, presumably facet disease, but certainly localized disc without frank herniation could give a similar history and exam." He observed that the bone scan was "compatible with degenerative disc disease without evidence of metastatic change." Dr. Hutchinson suggested that Morehouse try 220mg of Aleve, try to lose weight, and begin physical therapy to strengthen his lumbar core. (R. 420-21).

At a follow-up on July 6, 2011, after some physical

therapy, there was little change in his physical exam. Dr. Hutchinson suggested continuing with physical therapy and trying to lose weight. He prescribed a pain reliever and indicated Morehouse should follow-up as needed. (R. 324-25).

On October 12, 2011, Morehouse returned to Dr. Hutchinson. He noted that Morehouse had lost weight and was walking one to two miles for exercise. He also observed that pain medication was exacerbating reflux disease and recommended changing his pain medication to Tylenol, and continuing his weight loss efforts. He diagnosed chronic low back pain with degenerative changes. (R. 327).

Morehouse apparently relocated in 2012 and in September 2012 he consulted with Dr. David A. Vincent regarding his complaints of low back pain. Dr. Vincent described Morehouse's complaints as a "jabbing pain" which was "fairly unpredictable as to when it happens and there is no one activity that can make it happen." Dr. Vincent also reviewed an MRI performed September 5, 2012, which revealed "mild multilevel degenerative changes but no significant neural compromise." On exam, Dr. Vincent noted that Morehouse had normal strength in all extremities and normal heel to toe walking, normal reflexes and posture. He had moderately reduced range of motion in his lumbosacral spine, but had paraspinal muscle strength and tone within normal limits, a negative straight leg raising test, and

no tenderness in the SI joint. Additionally, his sensation was intact, and he had a normal gait and the ability to stand without difficulty. Dr. Vincent diagnosed Morehouse with "multilevel degenerative disease with perhaps mild to moderate stenosis, but nothing significant." He noted that Morehouse had already undergone physical therapy and was "not interested in proceeding with this at this time." Accordingly, he referred him to colleagues, Dr. Levi and Horn because "I cannot define a surgically treatable cause for his pain at this time." (R. 484).

On October 23, 2012, Morehouse saw Physician's Assistant Sara Tyszko. Her history was essentially the same as Dr. Vincent's. She discussed spinal injections at L4-5 and L5-S1 and developed a plan for treatment with Dr. David S. Levi. (R. 485-86). Thereafter, Morehouse underwent an epidural steroid injection. On April 3, 2013, he returned to see Dr. Levi who observed that his pain was down to "about a 3 at night." His symptoms were unchanged from the previous visit and Dr. Levi diagnosed low back pain and recommended that Morehouse "continue his own exercise program." (R. 491).

On July 10, 2013, Morehouse returned to Dr. Weiss who observed that Morehouse had been seeing Dr. Hutchinson for back pain and received another x-ray on July 8. On examination by Dr. Weiss, he had pain with movement and a tender low-mid lumbar

spine.  Straight leg raising was 75 degrees bilaterally.  He noted that Morehouse intended to proceed with weight loss surgery "and apply for disability due to his longstanding back pain."

Prior to Morehouse's July 10, 2013 consultation with Dr. Weiss, Dr. Hutchinson wrote Dr. Weiss to explain his recent consultation regarding Morehouse's back pain.  In this July 9, 2013 communication he described Morehouse's pain as "episodic" and sharp, mainly in the "right low back."  He noted that Morehouse was "tolerating his current medication without difficulty," and Morehouse again had normal reflex bilaterally in his legs.  He could also stand on his toes and heels without difficulty.  Dr. Hutchinson diagnosed "advanced lumbar spondylosis with facet arthrosis and low back pain managed with facet injection.  He suggested continuing home exercise and discussing the possibility of weight loss surgery.

In addition to his treating physicians, the ALJ relied upon record reviews by two agency physicians.  In August 2011, Dr. Nathanial Kaplan reviewed the medical records and opined that Morehouse could lift 20 lbs. occasionally, 10 lbs. frequently, and sit or stand with normal breaks for six hours in each eight hour work day.  He also found postural limitations in climbing, stooping, kneeling, crawling and crouching, but no limitations in fine manipulation or communication.  (R. 75-77).  On

reconsideration in February 2012, Dr. Virginia Kitner again reviewed the records and considered Morehouse's claim that his condition was progressively worsening. After reviewing the records of both Dr. Hutchinson and Dr. Weiss, Dr. Kitner concurred with the limitations found by Dr. Kaplan. (R. 86-87).

At the hearing on July 18, 2013, Morehouse testified that his previous work as a financial analyst with Radiant Systems, and before that with Johnson Controls, generally involved "more sitting than standing." He stated that he occasionally had to lift 10 lbs., but never more than that. (R. 54). He testified that he previously received physical therapy and had been treated by Dr. Vincent and Dr. Levi, but that he was not presently undergoing treatment. He stated that he anticipated undergoing weight loss surgery. (R. 54).

Morehouse described his regular activities, which included babysitting his grandchildren, ages 4 years and 4 months. He stated: "we do a lot of transportation of these children and look after their needs." (R. 58). This mirrored his discussion of his daily activities in his application, in which he described preparing all of his own meals "in the normal amount of time." (R. 224). He stated that he was not limited in his ability to do any of the "usual household chores," although occasionally it took a little longer because of breaks from activities. (R. 225). He also stated that he engaged in the

"usual amount of travel," could walk and drive a car, and shop
for groceries, clothes, and other household items.   (R. 225-26).
He indicated that his hobbies and interests included watching
T.V., shooting and PCs.   (R. 226).   He also said that he
regularly attended church and social groups, but described a
limited ability to walk, sit, kneel, or climb stairs as a result
of his condition.   (R. 227).   At the hearing he testified to
making regular trips to Connecticut which involved a 9-14 hour
car trip during which he shared the driving duties with his
wife. (R. 52).

    In addition to testimony from Morehouse, the ALJ also
examined Ruth Fast, a Vocational Expert.   The VE first
characterized all of Morehouse's relevant past work as highly
skilled and sedentary.   (R. 65).   Thereafter, the ALJ asked the
VE if a hypothetical individual with the same age, education and
work background as Morehouse, but who was limited to lifting 10
lbs. occasionally, and sitting and standing four hours within an
eight hour work day with a sit/stand option could perform his
past work.   She testified yes "as generally performed."   (R.
66).   The ALJ also asked whether a person who was limited to low
stress tasks and could not perform "high levels of
responsibility," could perform the claimant's past work, and she
testified "no." She also testified that if "due to chronic back
pain, the individual was unable to sustain an eight hour work

day 40 hours a week, that individual would not find work in the national economy." (R. 68). Finally, she testified that her opinions were consistent with the information contained in the Dictionary of Occupational Titles. (R. 67).

### III. <u>STANDARD OF REVIEW</u>

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison Co. of New York v. NLRB</u>, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966).

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996); <u>Hays</u>, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to

11

whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for disability insurance benefits under sections 416(i) and 423 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under age sixty-five, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

The Social Security Regulations define "disability" as the:

> Inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment" which makes it impossible to do previous

12

work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five questions which the ALJ must answer are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The burden of proof and production

rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses, and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

## A.    The ALJ's Decision

In this case, after first finding that Morehouse met the insured status requirements of the Social Security Act through September 30, 2013, the ALJ made the following findings under the five part analysis: (1) Morehouse had not engaged in substantial gainful activity since his alleged onset date of December 19, 2008; (2) he had severe impairments of obesity, sleep apnea and disorders of the back; (3) he did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in Appendix 1; (4) Morehouse had the RFC to perform a modified range of light work

in work activities that allow him to avoid climbing ropes or ladders and scaffolds, kneeling, and crawling. He would be limited to lifting not more than 10 pounds occasionally, standing four hours and sitting for up to six hours in an eight-hour work day, with a sit/stand option. As all of Morehouse's past relevant work was within the limit of his RFC, Morehouse was found not disabled at Step 4. (R. 30-36).

Morehouse now argues the ALJ erred in determining his RFC and finding him not disabled. Although his pro sé pleadings are not precisely aligned with the inquiry before this court, he has generally articulated evidence in the record which he claims shows his disability. He also argues that the agency physicians did not examine a complete record and that the VE failed to appreciate the stress involved in his prior positions. Accordingly, this report will examine whether the ALJ (1) improperly evaluated the medical evidence and (2) did not support with substantial evidence his finding that Morehouse's testimony was "not entirely credible." Additionally, Morehouse argues that the ALJ improperly evaluated the evidence provided by the VE. The Court considers each argument below.

**B.  The ALJ properly evaluated the evidence bearing on Morehouse's RFC.**

Morehouse first contends that the medical records, particularly from Dr. Hutchinson and the 2008 x-ray interpreted

15

by Dr. Jay, suggest he is disabled and that the ALJ erred in determining his RFC, which is defined as the plaintiff's maximum ability to work despite his impairments. 20 C.F.R. § 404.1545(a)(1); see SSR 96-9p, 1996 WL 374185 (S.S.A.) ("RFC is the individual's maximum remaining ability to perform sustained work on a regular and continuing basis."). When a plaintiff's impairments do not meet or equal a listed impairment under step three of the sequential analysis, the ALJ must then determine the plaintiff's RFC. 20 C.F.R. § 404.1520(e). After doing so, the ALJ uses that RFC at step four of the sequential analysis to determine whether the plaintiff can perform his past relevant work. Id. § 404.1545(a)(5)(i). If it is determined that the plaintiff cannot perform past relevant work, the ALJ uses the RFC at step five to determine if the plaintiff can make an adjustment to any other work that exists in the national economy. Id. § 404.1545(a)(5)(ii).

At the administrative hearing level, the ALJ alone has the responsibility of determining RFC. Id. § 1546(c). RFC is determined by considering all the relevant medical and other evidence[1] in the record. Id. §§ 404.1545(a)(3), 404.1527(b). Relevant evidence includes "information about the individual's

---

[1] "Other evidence" includes statements or reports from the claimant, the claimant's treating or non-treating source, and others about the claimant's medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how impairments or symptoms affect the claimant's ability to work. 20 C.F.R. § 404.1529(a).

symptoms and any 'medical source statements' - i.e., opinions about what the individual can still do despite his or her impairment(s) - submitted by an individual's treating source or other acceptable medical sources." SSR 96-8p, 1996 WL 374184, at *2 (S.S.A.).

In this case, the ALJ found that Morehouse has the RFC to perform light work with added limitations on lifting, sitting, and standing, as well as postural limitations related to his back pain. Without identifying any specific contrary medical record, Morehouse argues that the ALJ "failed to properly consider [the records] in their entirety and showed prejudice to the Plaintiff throughout the process." (ECF No. 14, at 16).

1. **The ALJ properly explained the weight assigned to all medical source statements.**

Morehouse contends that the ALJ erred because the evidence he submitted "considered collectively render plaintiff unable to engage in any substantial gainful activity." (ECF No. 14, at 2). Specifically, Morehouse appears to contend that the ALJ improperly discounted evidence of his pre-existing disability ratings and the fact that his back condition was getting progressively worse.

As stated previously, the ALJ alone has the responsibility of determining RFC. In doing so, the ALJ must consider the objective medical evidence in the record, including the medical

opinions of the treating physicians and the non-examining medical consultants. In assigning weight to any medical opinion, the ALJ must consider the following factors: (1) "[l]ength of treatment relationship;" (2) "[n]ature and extent of treatment relationship;" (3) degree of "supporting explanations for their opinions;" (4) consistency with the record; and (5) the specialization of the physician. 20 C.F.R. § 404.1527.

Generally, the opinion of a treating physician is given more weight than that of a non-treating or non-examining medical source. Id. § 404.1527(c)(1)-(2). A treating physician's opinion merits "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. § 404.1527(c)(2). Conversely, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590.

Because the regulations require the ALJ to evaluate every medical opinion, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in [the regulations]." SSR 96-2P, 1996 WL

18

374188, at *5 (S.S.A.).  When the ALJ determines that the
treating physician's opinion should not be given controlling
weight, the ALJ must articulate "good reasons" for his decision.
20 C.F.R. § 404.1527(c)(2).[2]

Here, Morehouse is not able to identify any specific
opinion or medical record which the ALJ rejected.  Indeed, all
of his treatment for back pain was conservative, involving
mostly physical therapy and over-the-counter pain relievers.
The more invasive treatment he received - steroid injections -
appears to have significantly improved his pain.  (R. 490).  In
fact, none of his medical providers offered any opinion
regarding Morehouse's limitations that would suggest he was
incapable of sedentary work.  As a result, the ALJ did not err
in analyzing the medical record.

Morehouse appears to contend that because he previously
received a 50% disability rating in connection with a 1989
workers' compensation claim, (ECF No. 14, at 22), and because
his condition had progressed - that this evidence is sufficient
to establish his disability.  It is not.

A claimant's RFC is determined by considering <u>all</u> the
relevant medical and other evidence in the record and the weight
assigned to an opinion is in part determined by how consistent

---

[2] In fact, under the applicable regulations, the ALJ is required to "explain"
in his decision the weight accorded to <u>all</u> opinions - treating sources,
nontreating sources, state agency consultants, and other nonexamining
sources.  20 C.F.R. § 404.1527(e)(2)(ii).

it is with the medical record.

"When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence." Armentrout v. Astrue, 3:10CV504, 2011 WL 4625931, at *4 (E.D. Va. June 2, 2011), report and recommendation adopted, 3:10CV504, 2011 WL 4625912 (E.D. Va. Oct. 3, 2011). Here, all of Morehouse's medical records support the ALJ's finding that he was capable of sedentary work on a sustained basis. The state agency physicians reached the same conclusion. (R. 75-77, 86-87).

A claimant's prior determination of disability may be entitled to weight in some circumstances. 20 C.F.R. §§ 404.1501, 404.1512(b)(5); Bird v. Comm'r of Soc. Sec., 699 F.3d 337, 343 (4th Cir. 2012). But, in this case, the Claimant's evidence appears to involve only a physician's opinion related to an award under a state-compensation scheme. This is not a decision by a "governmental or nongovernmental agency about whether" a claimant is disabled. 20 C.F.R. § 404.1512(b)5. In addition, Morehouse continued employment for nearly twenty years after the rating, and the earlier rating related to the same condition - back pain - which was thoroughly examined in the ALJ's discussion of claimant's subsequent treatment by Dr. Hutchinson,

Dr. Weiss and Dr. Vincent.  (R. 33-35).  As a result, the ALJ was not required to analyze or discuss the unsupported disability rating.[3]

Thus, it is clear that the ALJ considered all of the medical evidence, and properly explained the weight afforded this evidence.

**2.  The ALJ correctly evaluated Morehouse's complaints of pain.**

Morehouse next argues that the ALJ erred in evaluating his testimony, writing that the ALJ "showed prejudice towards Plaintiff" and dismissed evidence as "not fully credible." (ECF No. 14, at 14).  The ALJ specifically found that, while Morehouse's medically determinable impairments could reasonably be expected to cause the symptoms alleged, Morehouse's own statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible.  (R. 32).

In deciding whether a plaintiff is disabled, the ALJ must consider all symptoms, including pain, and the extent to which such symptoms can reasonably be accepted as consistent with the objective evidence. 20 C.F.R. § 404.1529(a).  A plaintiff's subjective statements about pain or other symptoms alone are not

---

[3] The evidence of prior ratings appears in letters related to settlement of a state workers compensation claim and includes no description of the standards employed, or the clinical evidence supporting the ratings.  (R. 467-71).  See Bird, 669 F.3d at 343 (noting that VA ratings are given weight "because the purpose and evaluation methodology of both programs are closely related").

enough to establish disability. Id. Under both federal regulations and Fourth Circuit precedent, determining whether a person is disabled by pain or other symptoms is a two-step process. First, the plaintiff must satisfy a threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the symptoms claimed. 20 C.F.R. § 404.1529(b); Craig, 76 F.3d at 594-95. "However, while a claimant must show by objective evidence the existence of an underlying impairment that could cause the pain alleged, 'there need not be objective evidence of the pain itself.'" Craig, 76 F.3d at 592-93 (quoting Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986)).

Although Morehouse satisfied his initial burden under the two-step inquiry set forth in the regulations and adopted by the Fourth Circuit, the ALJ found his statements regarding his limitations less than fully credible. (R. 33). In so finding, the ALJ considered the entire record and documented his review in detail in the opinion. He specifically observed that Morehouse had maintained extensive activities and a nearly normal daily routine in which he prepared all his meals, shopped for groceries, pursued hobbies, including personal computers and shooting. (R. 33). He noted that Morehouse regularly took long car trips, attended church, participated in social groups and stopped working, not as a result of disability, but because his

contract ended. (R. 14, 33). More importantly, the ALJ reviewed the medical records from both Dr. Weiss and Dr. Hutchinson, which, as already demonstrated, reflect very conservative treatment for a chronic, but manageable back condition. In so doing, the ALJ complied with both the regulations and Fourth Circuit precedent in evaluating Morehouse's testimony. There is ample objective evidence in the Record to contradict Morehouse's self-report of disabling limitations and to support the ALJ's credibility determination. Accordingly, the Court finds the ALJ properly evaluated Morehouse's credibility.

C. **The hypothetical presented to the VE and Morehouse's RFC adequately reflected the limitations found by the ALJ.**

Morehouse's next argument appears to relate to the limitations described in the ALJ's hypothetical to the VE. In reaching his decision that Morehouse was capable of performing his past relevant work, the ALJ relied on the VE's testimony in response to a hypothetical question. When relying on VE testimony based on hypothetical questions, the hypotheticals posed must account for all of the claimant's limitations as shown by the record. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). If limitations are omitted, the VE's testimony is of limited value, and may not constitute substantial evidence. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005) (citing Walker, 889 F.2d at 50). Failing to consider

limitations shown by the evidence, and then relying upon the errant hypothetical to form an opinion about the availability of work suitable to the claimant is error. Hancock v. Barnhart, 206 F. Supp. 2d 757, 767 (W.D. Va. 2002).

Morehouse claims the ALJ erred by rejecting the "testimony of his own Vocational Expert." Apparently, this argument refers to the VE's testimony regarding a person who was unable to perform sustained work eight hours per day for a 40-hour week without having to take regular unscheduled breaks during the work day to relieve his pain. (R. 68). Morehouse argues – based largely on his own statements – that he is no longer able to perform his past work because of the overtime he was required to work and the stress associated with his previous high-level position. He states that he performed it previously by giving himself "accommodations," which he could not demand of a new employer. (ECF No. 14, at 4-5). If this evidence were credited and such restrictions included in the hypothetical, Morehouse could not perform either of the positions identified by the VE. (R. 68). But after reviewing the VE's testimony and Morehouse's arguments, the undersigned finds no error in the ALJ's analysis.

On examining the VE, the ALJ first asked her to characterize Morehouse's past work, which she characterized as highly skilled, sedentary work. (R. 65-66). Next, the ALJ crafted a hypothetical including Morehouse's age, education and

24

past experience, and all of the limitations he later imposed in his RFC.  The ALJ asked whether such a person could perform Morehouse's past relevant work, and she answered the he could. The ALJ also asked if a need for excessive rest breaks or unscheduled absences would preclude work, and the VE testified that it would. But, the ALJ's RFC did not impose a restriction involving extra work breaks or unscheduled absences, and he properly relied on the first hypothetical and the VE's testimony in concluding sedentary work was available to Morehouse.  (R. 13-14).

The ALJ's RFC and hypothetical adequately reflect the limitations he imposed, and those limitations sufficiently accommodate Morehouse's impairments.  Morehouse has identified no medical evidence suggesting he would require extensive breaks or unscheduled absences. Nor do any of his records suggest that he could not meet the physical demands of his sedentary previous employment for 40 hours per week.  The fact that this claimant may have previously been required to work longer than 40 hours per week in a similar position does not undermine the VE's testimony that sedentary work is available in the national economy for someone with Morehouse's high-level of skill and education.  As set forth above, the ALJ explained the reasons for his analysis of the medical evidence.  In addition, Morehouse's receipt of unemployment, his extensive activities of

daily living, and the limited treatment for his back condition all constitute substantial evidence to support the hypothetical as presented. Accordingly, the undersigned finds no error of law in the ALJ's use of the VE's testimony.

## V.  RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court GRANT the Commissioner's motion for summary judgment (ECF No. 15), DENY Morehouse's motion for summary judgment (ECF No. 14), and affirm the final decision of the Commissioner.

## VI.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.  Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of filing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2.  A district judge shall make a _de novo_ determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file

26

timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

                                        /s/
                                    Douglas E. Miller
                                    United States Magistrate Judge

                                    DOUGLAS E. MILLER
                                    UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
September 17, 2015

## <u>Clerk's Mailing Certificate</u>

     A copy of the foregoing Report and Recommendation was mailed this date to each of the following:

**John S. Morehouse**
303 Markos Court
Hampton, VA 23666

**Mark Anthony Exley**
United States Attorney Office
101 W Main St
Suite 8000
Norfolk, VA 23510


Fernando Galindo, Clerk


By _____/s/_____
           Deputy Clerk

_____September 18,_____, 2015